Liza Cristol-Deman (SBN 190516)
Francesca Simon (SBN 359441)
McGUINNESS LAW GROUP, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile: (510) 439-2951
Email: lcristoldeman@mcguinness-legal.com
fsimon@mcguinness-legal.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAURA HURLEY, JENNIE MENKE, SANDRA LOVAS, and ANDREW LOVAS, BY AND THROUGH HIS SUCCESSOR IN INTEREST, SANDRA LOVAS,<br><br>Plaintiffs,<br><br>vs.<br><br>2121 SACRAMENTO STREET OWNER, L.P., a Delaware Limited Partnership; BALLAST INVESTMENTS, LLC; and BRICK AND TIMBER, INC.,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF; DEMAND FOR TRIAL BY JURY** |

## I. INTRODUCTION

1. Plaintiffs Maura Hurley, Sandra Lovas, Andrew Lovas[1], and Jennie Menke are residents of the apartment building located at 2121 Sacramento Street in San Francisco, California ("Sacramento Street Apartments"). Ms. Hurley and Ms. Lovas live on the third floor, as did Mr. Lovas before his death. Ms. Menke lives on the sixth floor. Each of the plaintiffs has a

[1] Sadly, Andrew Lovas died on July 14, 2026, just before this Complaint was finalized for filing with the Court. His successor in interest, Sandra Lovas, brings his claims in his stead.

disability that substantially limits their mobility and ability to use stairs.

2. The only elevator in the building repeatedly breaks down. In the spring of 2026, the elevator was out of service for 46 straight days. The elevator outages substantially restrict plaintiffs' access to and egress from their apartment units because of their disabilities.

3. Defendants have been informed that each of the plaintiffs has a disability that makes their use of the stairs dangerous, painful, and excessively strenuous. Nevertheless, Defendants have refused to keep the elevator in good working condition and make timely repairs when it malfunctions, in part because they have failed to pay their elevator repair company. Defendants have also refused to make reasonable accommodations in response to the Plaintiffs' requests. Defendants' conduct constitutes unlawful discrimination against people with disabilities.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiffs' state law claims since those state law claims arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper because the claims alleged in this complaint arose from unlawful conduct occurring in San Francisco County, California, where the real property at the center of this action is located.

## III. INTRADISTRICT ASSIGNMENT

6. Pursuant to Civil L.R. 3-2(d), assignment to the San Francisco or Oakland Division is proper here because the action arose in San Francisco County.

## IV. PARTIES

7. Plaintiff Maura Hurley is 84 years old. She has been a tenant in unit 304 of the Sacramento Street Apartments since 1977. Unit 304 is located on the third floor. It has two bedrooms and two bathrooms.

8. Ms. Hurley is a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair

Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. She has medical conditions that substantially limit major life activities, including walking. She is especially limited in her ability to walk up stairs. She can walk down stairs with difficulty if she takes each stair slowly and carefully while gripping the bannister with both hands, but she is at high risk of falling and experiencing catastrophic injury.

9. Sandra Lovas is 84 years old. She has been a tenant in unit 303 of the Sacramento Street Apartments since 1978. Unit 303 is located on the third floor. It has two bedrooms and two bathrooms. Sandra Lovas is married to and resided with Andrew Lovas until his death on July 14, 2026. She proceeds in this matter on her own behalf and as Andrew Lovas' successor in interest.

10. Sandra Lovas is a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. She has medical conditions including double hip replacements that substantially limit major life activities, including walking and balancing. She is especially limited in her ability to use stairs without excessive pain, fear, strain, and catastrophic risk of falling.

11. Andrew Lovas was 83 years old at the time of his death. At all times relevant to this complaint, he was a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. At all times relevant to this complaint and until his death, he had a severe neurological condition with symptoms known as Parkinsonianisms. His condition and symptoms substantially limited major life activities, including walking and balancing. He used a specialized neurological walker to ambulate at the direction of his physician. Using the walker on the stairs was impossible. He could not use the stairs without extreme fear, assistance, and a catastrophic risk of falling. Sandra Lovas is his successor in interest.

12. Jennie Menke is 47 years old. She has been a tenant in unit 604 of the Sacramento

Street Apartments since 2010. Unit 604 is located on the sixth floor. It has two bedrooms and two bathrooms. She resides with her husband and four minor children.

13. Ms. Menke is a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. She has chronic medical conditions including multilevel central canal stenosis in her spine. These conditions substantially limit major life activities, including using the stairs, which exacerbates her medical condition and causes her pain. She is especially limited in her ability to use stairs while carrying anything more than 10 pounds.

14. The Sacramento Street Apartments contain approximately 24 dwelling units that are rented to members of the public. The building and all apartment units within the building constitute dwellings under the Fair Housing Act, 42 U.S.C. § 3602 (b), and housing accommodations within the meaning of FEHA, Cal. Gov. Code § 12927 (d).

15. According to public records, Defendant 2121 Sacramento Street Owner, L.P. is the owner of the Sacramento Street Apartments. It is a Delaware Limited Partnership that is registered to do business in California. Its General Partner is 2121 Sacramento Street GP, L.L.C.

16. Defendant Brick and Timber, Inc. ("B&T") is a California corporation with an address in San Francisco. B&T has served as the management company for the Sacramento Street Apartments at all times relevant to this complaint. B&T is a wholly owned subsidiary of Defendant Ballast Investment, LLC.

17. Plaintiffs are informed and believe, and thereon allege, that B&T solely manages dwellings owned and operated by Ballast Investment, LLC, its limited liability corporate partners, and the limited partnerships that Ballast has set up for the sole purposes of owning individual parcels of real property. B&T's interests and Ballast's interests are unified.

18. Defendant Ballast Investment, LLC ("Ballast") is a Delaware limited liability corporation with a principal place of business in San Francisco.

19. Plaintiffs are informed and believe, and thereon allege, that Ballast's primary or sole business is real estate investments. Rather than purchasing or owning property in its own

name, Ballast's business model is to set up a separate limited liability corporation and limited partnership for each parcel of real property that it purchases, including the Sacramento Street Apartments. Ballast remains in control of the ownership of each property, if not in name then in function.

20. Plaintiffs are informed and believe, and thereon allege, that Ballast is the alter ego of the other named defendants and their interests are unified.

21. Ballast and its managers exercise complete control over the other defendants with respect to the policies, practices, and decisions at issue here. Ballast used its complete control to engage in discriminatory and wrongful practices that injured plaintiffs.

22. Plaintiffs are informed and believe, and thereon allege, that Ballast's subsidiaries – here B&T, 2121 Sacramento Street Owner, LP, and 2121 Sacramento Street GP, L.L.C – are inadequately capitalized.

23. Each defendant and the Sacramento Street Apartments constitute business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51.

24. In doing the acts alleged herein, each defendant was at all times relevant to the action the owner, lessor, lessee, general partner, limited partner, agent, employee, representing partner, officer, director or joint venturer of the remaining Defendants and was acting within the course and scope of its actual or apparent authority pursuant to an agency relationship. Plaintiffs are further informed and believe, and thereon allege, that each Defendant herein, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to the other defendant. Each defendant is directly or vicariously liable for the unlawful housing practices alleged in this complaint for the defendant's own conduct, or for failing to take prompt action to correct and end an unlawful housing practice by that defendant's employee or agent, where the defendant knew or should have known of the unlawful conduct.

25. Each defendant is also vicariously liable for unlawful conduct by the defendant's agent or employee, regardless of whether the defendant knew or should have known of the conduct that resulted in the unlawful housing practice, consistent with agency law.

## V. FACTUAL ALLEGATIONS

26. The Sacramento Street Apartments is a seven-story building with a lobby on the ground level and residential dwelling units located above the lobby. There is only one elevator. The building is in the prestigious Pacific Heights neighborhood of San Francisco. The apartments located on the higher floors have views of both the Golden Gate and Bay Bridges. The apartments on the front side of the building have views of Lafayette Park, which is directly across the street. The apartments are highly desirable and marketable.

27. The Sacramento Street Apartments are subject to the provisions of Chapter 37 of the San Francisco Administrative Code (San Francisco Rent Ordinance). Under the San Francisco Rent Ordinance, Defendants have a limited ability to raise the rent for existing tenants but may raise the rent to market rates when the unit is vacated. The San Francisco Rent Ordinance (and various state laws) also prohibit Defendants from evicting Plaintiffs and other tenants without "just cause."

28. As a result of their long-term tenancies, rent control, and skyrocketing rents in San Francisco, the monthly rent that plaintiffs pay is significantly below market. Plaintiffs are informed and believe, and thereon allege, that a one-bedroom/one-bathroom apartment rented to new tenants in early 2026 was rented at a monthly rent that far exceeds what any of them pay for their two-bedroom/two-bathroom apartments. If any of the Plaintiffs were to vacate their units, Defendants would rent them to new tenants at market rates that far exceed what the Plaintiffs currently pay, to the financial benefit of defendants.

29. Because Plaintiffs' monthly rents are substantially below market, Defendants have a strong financial incentive to create or maintain conditions that cause each of the Plaintiffs to vacate their dwellings. *See* San Francisco Rent Ordinance § 37.9(a) ("As market rents continue to increase in San Francisco, landlords of rent-controlled units have a greater incentive to prevent long-term tenancies."). Defendants are aware that they will reap a significant financial reward if Plaintiffs vacate their dwellings, and Defendants committed the acts and omissions set forth in this Complaint to achieve that end.

30. Without an elevator that reliably works, Plaintiffs cannot stay in their dwellings

and will be displaced. They cannot find alternative housing at the same or comparable rents to their rent-controlled apartments.

31. On the ground floor, the lobby has mailboxes, bulletin boards for community announcements, a laundry room, and a central collection area for garbage and recycling. Packages are delivered to the area around the mailboxes.

32. All the dwelling units at the Sacramento Street Apartments are above the ground floor. Individuals with mobility impairments due to disabilities must use the elevator to reach their dwelling units, to leave their units to access amenities like the laundry room, or to leave the building. Thus, an elevator is a necessary part of the accessible path of travel for all people with disabilities who are unable to use the stairs, such as plaintiffs.

33. There is a stairway with a single banister that goes from the lobby to each floor. To reach the third floor using the stairs requires traversing three flights of stairs. To reach the sixth floor using the stairs requires traversing six flights of stairs.

34. Defendants purchased the Sacramento Street Apartments in approximately 2021. Since then, the elevator has malfunctioned frequently. Sometimes the elevator is completely out-of-order for hours, days, or weeks. At other times, the elevator will not stop at certain floors. These frequent outages and malfunctions leave tenants with mobility impairments either trapped inside their units or risking injury, fear, pain and strain if they attempt to use the stairs. It is a hardship for them to obtain groceries, other necessities, and collect their mail and deliveries. They miss out on appointments and social life. They lack the ability and freedom to come and go from their apartments compared to people without disabilities. Tenants with disabilities must guess whether and when they will be able to leave their units, or whether they will be able to get back to their units when they leave.

35. The elevator malfunctions and outages worsened starting in late 2024. Between September and December 2024, for example, the elevator intermittently stopped service to and from the third floor. Ms. Lovas or Ms. Hurley notified defendants by email each time the elevator stopped working.

36. The elevator broke down completely starting on approximately October 2, 2024.

It was temporarily restored to service later in the month, but the elevator continued to malfunction by stopping just short or just past the floor. This created a significant step to get on or off the elevator. Ms. Lovas emailed defendants to complain about the hazard twice in October 2024.

37. This malfunction was temporarily fixed sometime in late October or early November 2024, but then recurred and persisted off-and-on for at least six more months.

38. The elevator continued to malfunction or break down intermittently in the last months of 2024 and the first half of 2025.

39. The elevator unit of the California Department of Industrial Relations, Division of Occupational Safety and Health, ("Cal. OSHA") inspected the elevator on April 9, 2025, and found it to be out of compliance with safety orders and lacked a valid permit.

40. On or about July 21, 2025, Cal. OSHA issued an order prohibiting the use of the elevator due to failure to comply with previous safety orders and obtain a valid permit. Despite the order, the elevator continued to operate until it broke down on August 12, 2025.

41. On or about August 12, 2025, the elevator again malfunctioned. It would not stop on the third floor.

42. On or about the same date, August 12, 2025, Ms. Hurley sent an email informing defendants of the malfunction, stating that "several tenants on [the] 3rd floor are unable to use stairs, so it's vital that this be fixed." She did not receive any response.

43. Three days later, on or about August 15, 2025, the elevator remained broken. Hurley sent another email to Defendants, stating that "this situation is particularly treacherous for 3rd floor tenants with limited mobility." She requested that defendants fix the elevator without delay.

44. On or about August 16, 2025, Hurley sent another email to Defendants, stating:

> "In light of the fact that it has been five days without a working elevator, I – as a disabled tenant – am requesting the following:
> To be temporarily located to an ADA safe, convenient apartment for the duration of the outage. In the meantime, the assistance of runners to help me with such tasks as doing laundry, help carrying groceries up to [sic] stairs and taking down trash and garbage."

45. Defendants did not respond to Ms. Hurley's request for reasonable accommodations. Nor did they repair the elevator.

46. On or about August 19, 2025, Ms. Hurley again emailed Defendants, reiterating her request for accommodations and disclosing the nature of her disability. Defendants did not respond to this request and the elevator remained out of service for the third floor.

47. The elevator remained out of service to and from the third floor until September 8, 2025.

48. During various days in December 2025, the elevator would not stop on the third floor.

49. The elevator has been completely out of service repeatedly in 2026, including but not limited to 18 days between January 19 through February 5, 2026; 47 days between February 18 through April 6, 2026 (partially restored for some floors earlier), intermittently over 15 days in May 2026, and approximately two weeks in June 2026.

50. During the elevator outages in 2026, each of the plaintiffs has contacted Defendants via email dozens of times to complain about the outage, request updates on repair, and to advise defendants that they have disabilities that make using the stairs difficult, dangerous, and painful. Defendants' responses never addressed their requests for accommodations.

51. For example, Ms. Menke emailed defendants on January 21, 2026, stating that she had a disability and could not carry anything up the stairs. As the mother of four children, including a toddler, her inability to carry anything up the stairs was especially difficult. Her disability made it impossible to carry her toddler, loads of laundry, or groceries up the stairs during elevator outages.

52. Menke emailed defendants again many times during the outages seeking updates about repair efforts and to ensure that defendants were aware of her disability. She also emailed defendants many times to report that plastic sheeting covering the stairs posed a safety hazard, especially during the elevator outages when all residents relied on the stairs to get to and from

their units.

53. In February 2026, during the elevator outage, Star Elevator employees informed at least one resident that they were not servicing and repairing the elevator because Defendants had failed to pay an outstanding balance.

54. On or about March 4, 2026, a group of tenants, including plaintiffs, mailed a letter to Defendants via certified mail concerning the elevator outages. As of that date, the elevator had been out of service for 14 days straight. The letter requested immediate repair of the elevator and noted that many tenants had disabilities. Defendants did not respond.

55. On or about the same day, March 4, 2026, the San Francisco Department of Building Inspection issued a notice of violation of the San Francisco Housing Code for the nonworking elevator. The notice defined the property as a nuisance under section 1001-d of the San Francisco Housing Code. The notice ordered defendants to comply by restoring the elevator to full function or replacing it within 7 days. Defendants did not comply and the elevator remained out of service.

56. On or about March 15, 2026, with the elevator still not working, Ms. Hurley emailed defendants and again requested reasonable accommodations based on her disability. She stated that she needed assistance gaining access to amenities on the lobby level, including grocery deliveries, the laundry room, and garbage and recycling areas. She did not receive any response from Defendants.

57. On or about March 18, 2026, Plaintiffs are informed and believe, and allege thereon, that San Francisco Department of Building Inspections issued another notice of violation because of the elevator outage.

58. On or about March 20, 2026, the elevator function was partially restored when it began serving two of the six floors in the building. Residents on the remaining four floors, including plaintiffs on the third floor, still did not have any accessible way to get to and from their units from the lobby or outside.

59. Between March 24, 2026, and April 6, 2026, Ms. Hurley emailed Defendants at least four times to complain about the continuing elevator outage.

60. The elevator was finally returned to service for all floors on April 6, 2026. By that date, Plaintiffs Hurley and Lovas had been without any accessible path to and from their apartments for 46 days straight. Mr. Lovas was trapped on the third floor of the building, unable to use the stairs to leave the building or use any amenities on the ground floor, for the duration of this outage.

61. In May 2026, the elevator only worked intermittently. It did not function for approximately 15 days during the month.

62. During one such outage, on May 11, 2026, Ms. Hurley emailed defendants and requested a reasonable accommodation "in a hotel or other accessible unit until the elevator is fixed." She stated that she was a "disabled adult unable to climb stairs." She did not receive a response.

63. On May 11, 2026, Ms. Lovas emailed defendants and requested reasonable accommodations based on disability for herself and her husband, Andrew Lovas. She stated that Mr. Lovas would need assistance getting down to the lobby to leave the building for an important medical appointment. She added that they also needed assistance with transporting deliveries, groceries, laundry, and garbage to and from their unit and the lobby. She did not receive a substantive response.

64. During another outage, on May 27, 2026, Ms. Hurley sent an email to defendants asking to be moved to an accessible unit if it was not fixed within 24 hours, because "I have muscular dystrophy and am unable to climb stairs." She did not receive a substantive response.

65. On June 4, 2026, the elevator broke down again. Ms. Lovas emailed defendants to request accommodations. They did not respond.

66. The elevator was not returned to service for approximately two weeks.

67. In late July 2026, the elevator again malfunctioned by stopping just short or just past the floor. This creates a significant step and a tripping hazard to get on or off the elevator. To date, this has not been repaired.

68. Some plaintiffs have requested and received small credits toward their rent payments from defendants because of the elevator outages. These rent credits do not constitute

reasonable accommodations and are not sufficient to compensate for the damages that each plaintiff has suffered.

69. Plaintiffs continue to fear and reasonably expect that the elevator will continue to malfunction or break down at any time, causing them to suffer injuries when they face entrapment in their units or the pain, embarrassment, fear, and risk of falling on the stairs. Worse, plaintiffs fear that they may have to move out of the building if the outages continue, leaving them unable to find alternative housing at anything close to comparable rent.

70. Defendants have a pattern and practice of not maintaining the elevator, refusing to pay their bills to ensure that the elevator is repaired when it breaks down, and refusing to make reasonable accommodations when the elevator is out of service. These actions and inactions are taken in reckless and conscious disregard of the rights and needs of tenants with disabilities, including Plaintiffs.

71. Plaintiffs' need for reasonable accommodations arises from Defendants' failure to maintain and repair the elevator. Defendants are obligated under various codes and statutes, including San Francisco Municipal Code section 713 (b), to maintain and repair the elevator. Under these circumstances, Defendants are barred from arguing that granting accommodations to Plaintiffs would constitute an undue financial or administrative burden, or a fundamental alteration. (Cal. Code Regs., tit. 2 § 12179 (d)).

72. Plaintiffs are informed and believe, and allege thereon, that the facts set forth herein show that Defendants' failure to maintain and repair the elevators constitutes a form of harassment, with the purpose or effect of encouraging Plaintiffs to vacate their rent-controlled units in the Sacramento Street Apartments, so that these units may be rented at a far higher monthly rate to new tenants.

## VI. INJURIES

73. As a result of Defendants' discriminatory and wrongful conduct, Plaintiffs have suffered emotional distress with attendant physical symptoms, including frustration, embarrassment, pain, violation of civil rights, and loss of dignity. Accordingly, Plaintiffs are entitled to recover compensatory damages pursuant to the federal Fair Housing Act, California's

Fair Employment and Housing Act, and related laws.

74. In doing the acts of which Plaintiffs complain, Defendants acted intentionally and with oppression, malice, and conscious or reckless disregard of Plaintiffs' fair housing rights. Accordingly, Plaintiffs are entitled to recover punitive and treble damages.

75. Defendants' failure to timely repair the elevator or provide alternative accommodations restricted Plaintiffs' access to and egress from their units because of their disabilities. Accordingly, Plaintiffs are entitled to actual, statutory, and treble damages.

76. Unless enjoined, Defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and their pattern or practice of discrimination unless relief is provided by the Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## VII. LEGAL CLAIMS

### A. FIRST CLAIM

### VIOLATION OF THE FAIR HOUSING ACT

**[42 U.S.C. § 3601 et seq.]**

77. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

78. Defendants, directly and vicariously, are liable for the commission of the following discriminatory housing practices, in violation of the Fair Housing Act ("FHA"):

a. Discriminating in the rental of housing, or to otherwise make unavailable or deny, a dwelling to a renter because of disability, 42 U.S.C. § 3604 (f)(1);

b. Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, 42 U.S.C. § 3604(f)(2);

c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, 42 U.S.C. § 3604(f)(3)(B)

79. Plaintiffs have been injured by each of these discriminatory housing practices and are aggrieved persons as defined in the FHA, 42 U.S.C. § 3602 (i). Accordingly, they are entitled to relief under 42 U.S.C. § 3613.[2]

**B. SECOND CLAIM**

**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

**[Cal. Gov't Code § 12955 et seq.]**

80. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

81. Defendants, directly and vicariously, are liable for the commission of the following discriminatory housing practices in violation of the Fair Employment and Housing Act ("FEHA"):

a. Discriminating against any person because of disability, Gov. Code § 12955 (a);

b. Otherwise making a dwelling unavailable because of disability, Gov. Code § 12955 (k);

c. Discriminating by providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability, Gov. Code 12927 (c)(1);

d. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, Gov. Code § 12927 (c)(1);

e. Failing to engage in an interactive process regarding Plaintiffs' requests for reasonable accommodations, Gov. Code § 12955; Cal. Code Regs., tit. 2, § 12177.

82. Plaintiffs were injured by each of these discriminatory housing practices and are aggrieved persons as defined by FEHA, Government Code § 12927 (g). As the direct and proximate cause of Defendants' violations of Gov. Code, § 12927 and § 12955, Plaintiffs suffered damages, including emotional distress with attendant physical injury, pain, loss of civil rights, frustration, fear, difficulty, and embarrassment.

[2] Plaintiff Andrew Lovas does not seek punitive damages under the Fair Housing Act.

83. Defendants' actions and inactions as alleged in this complaint are in clear violation of Defendants' statutory duties, done with the knowledge or reckless disregard of the fact that they would cause significant harm to Plaintiffs. Defendants' conduct was despicable, malicious, and oppressive as defined under Civil Code section 3294, and Plaintiffs are entitled to punitive damages.

84. Each of the Defendants was aware of the probable consequences of their conduct and deliberately failed to avoid those consequences and/or are vicariously liable pursuant to Civ. Code, § 3294, subd. (c).

85. Defendants' discrimination constitutes an ongoing violation under Gov. Code, § 12927, subd. (c)(1). Until the discriminatory policies and practices of each of the Defendants are enjoined, Plaintiffs will continue to be denied full and equal use and enjoyment of their housing and will suffer ongoing and irreparable injury.

86. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under Gov. Code § 12927, subd. (c)(1). Accordingly, Plaintiffs seek a declaration that Defendants have violated these subdivisions.

87. As the direct and proximate result of each of the Defendants' violations of Gov. Code, §§ 12955, 12955.8, subd. (b), Plaintiffs have suffered and continue to suffer emotional and physical pain and distress, exacerbated physical disabilities, loss of civil rights, frustration, difficulty, and embarrassment. As persons aggrieved by the Defendants' violation of FEHA, Plaintiffs are entitled to injunctive relief and damages, including punitive damages. (Gov. Code, § 12989.2.) [3]

88. Accordingly, Plaintiffs are entitled to relief under FEHA.

**C. THIRD CLAIM**

**VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT**

**[Cal. Civil Code § 51 et seq.]**

89. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the

[3] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

factual allegations contained in the preceding paragraphs.

90. Defendants are business establishments within the meaning of the Unruh Act. *See Marina Point, Ltd. v. Wolfson,* 30 Cal.3d 721, 731 (1982).

91. Defendants have denied Plaintiffs full and equal accommodations, advantages, facilities, privileges, or services in the operation of their business establishments by:

a. Discriminating against tenants, and others similarly situated, because of disability,

b. Making a dwelling unavailable because of disability;

c. Providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability;

d. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

92. Defendants further violated one or more separate standards for disability access, including the California Building Code Title 24-2, ASME A17.1 Safety Code for Elevators and Escalators and California Code of Regulations (CCR), Title 8, Elevator Safety Orders. Violation of a separate standard is a separate basis for liability. *Coronado v. Cobblestone Village Community Rentals*, 163 Cal.App.4th 831 (2008).

93. Defendants know of Plaintiffs' disabilities and that the repeated and lengthy elevator outages cause them hardship. Defendants have made affirmative choices that demonstrate their intention to discriminate based on disability, including but not limited to establishing policies or practices not to timely repair the elevator, refusing to pay their elevator maintenance company, ignoring requests for reasonable accommodation from tenants, and refusing to provide Plaintiffs with alternative housing.

94. Each of the Defendants was aware of the probable consequences of their conduct and deliberately failed to avoid those consequences and/or are vicariously liable pursuant to Civ. Code, § 3294, subd. (b).

95. The nature of each of the Defendants' discrimination under the Unruh Civil Rights Act constitutes an ongoing violation. Plaintiffs reasonably and credibly fear that the

elevator will continue to malfunction, causing them to suffer further injuries. Until the discriminatory policies and practices of each of the Defendants are enjoined, Plaintiffs will continue to be denied full and equal use and enjoyment of their housing and will suffer ongoing and irreparable injury.

96. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under the Unruh Civil Rights Act. Accordingly, Plaintiffs seek a declaration that Defendants have violated these subdivisions.

97. Plaintiffs were injured by Defendants' violations of the Unruh Act and are entitled to all available relief set forth in Civil Code § 52.[4]

**D. FOURTH CLAIM**

**VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**

**[Cal. Civil Code § 54 et seq.]**

98. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

99. The Disabled Persons Act ("DPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." (Civ. Code, § 54.1, subd. (b)(1).)

100. The DPA also provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." (Civ. Code, § 54.1, subd. (b)(3)(B).)

101. Defendants violated the Disabled Persons Act ("DPA") by denying individuals with disabilities, including Plaintiffs, full and equal access to a housing accommodation by:

---

[4] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

a. Discriminating against tenants and others similarly situated because of disability;

b. Making a housing accommodation unavailable because of disability;

c. Providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability;

d. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

102. Defendants further violated one or more separate standards for disability access, including the California Building Code Title 24-2, ASME A17.1, Safety Code for Elevators and Escalators and California Code of Regulations (CCR), Title 8, Elevator Safety Orders. Violation of a separate standard is a separate basis for liability. *Coronado v. Cobblestone Village Community Rentals*, 163 Cal.App.4th 831 (2008).

103. Plaintiffs have been harmed and continue to be harmed because repeated and lengthy elevator outages impede their ingress and egress from their units, cause them to suffer physical and emotional distress, exacerbate medical conditions, or delay recovery from those conditions. Defendants' failure to maintain the elevator, promptly repair the elevator, or offer alternative accommodations to Plaintiffs deprive them of full and equal access to their dwellings. Accordingly, they are entitled to all relief afforded under the DPA.[5]

104. Plaintiffs do not seek injunctive relief under Cal. Civ. Code § 55.

## E. FIFTH CLAIM

## NEGLIGENCE

## [Civil Code § 1714]

105. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

106. At all relevant times herein, Defendants owned, controlled, leased, and operated the Sacramento Street Apartments.

---

[5] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

107. Defendants have a duty of care to Plaintiffs to manage and maintain the Sacramento Street Apartments, including the elevator.

108. Defendants have an additional duty to comply with standards for disability access, including the California Building Code Title 24-2, ASME A17.1 Safety Code for Elevators and Escalators and California Code of Regulations (CCR) Title 8, Elevator Safety Orders. Defendants have violated these standards.

109. Defendants have negligently failed and continue to fail to maintain the elevator, promptly repair the elevator, or offer alternative accommodations to Plaintiffs when the elevator is out of service. Because Defendants have failed to maintain the elevator, they have not met their duty.

110. Defendants negligently, carelessly, wantonly, recklessly, tortiously, wrongfully, and unlawfully failed, and continue to fail, to properly maintain the elevator. Defendants knew, or in the exercise of reasonable care should have known, the risks of bodily injury from these acts and/or omissions and demonstrated a conscious disregard for Plaintiffs.

111. Defendants owed Plaintiffs a duty to operate the Sacramento Street Apartments in a manner that was free from unlawful discrimination, and to educate and train their agents to fulfil that duty.

112. As a further direct and proximate result of Defendants' negligent actions, Plaintiffs suffered damages, including emotional and physical distress, loss of civil rights, frustration, fear, difficulty, and embarrassment. Plaintiffs are entitled to injunctive relief and damages, including punitive damages.[6]

113. Defendants negligently violated their duty to Plaintiffs by engaging in discrimination against them based on their disability; specifically, by failing to fix the elevator and failing to provide any reasonable accommodations.

114. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under Civ. Code, §1714. Accordingly, Plaintiffs seek a declaration

[6] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

that Defendants have violated these subdivisions.

115. Plaintiffs have suffered damages and injuries as a result of Defendants' negligence. Accordingly, they are entitled to relief as set forth below.

**F. SIXTH CLAIM**

**HARASSMENT**

**[San Francisco Residential Rent Stabilization and Arbitration Ordinance, Section 37 *et seq*.]**

116. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

117. At all times relevant herein, Defendants were a landlord within the meaning of Section 37 of the San Francisco Residential Rent Stabilization and Arbitration Ordinance (the "Rent Ordinance").

118. Each of the Plaintiffs is a tenant within the meaning of Section 37 of the Rent Ordinance.

119. Defendants, directly and vicariously, are liable for the commission of the following actions in violation of Section 37.10B of the Rent Ordinance:

a. Interrupting, terminating, or failing to provide housing services required by contract or by State, County or local housing, health or safety laws;

b. Failing to perform repairs and maintenance required by contract or by State, County or local housing, health or safety laws;

c. Failing to exercise due diligence in completing repairs and maintenance once undertaken, or failing to follow appropriate industry repair, containment or remediation protocols designed to minimize exposure to noise, dust, lead paint, mold, asbestos, or other building materials with potentially harmful health impacts;

d. Violating any law which prohibits discrimination based on actual or perceived disability;

e. Other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy

of such dwelling unit and that cause, are likely to cause, or are intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit, or to surrender or waive any rights in relation to such occupancy.

120. Plaintiffs have been and continue to be harmed by Defendants' noncompliance with the Rent Ordinance. Accordingly, they are entitled to relief described in section 37.10B(c).[7]

**G. SEVENTH CLAIM**

**BREACH OF THE IMPLIED COVENANT OF QUIET ENJOYMENT (TORT)**

121. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

122. The rental agreement between Plaintiffs and Defendants contains an implied covenant giving Plaintiffs the quiet use and enjoyment of their respective dwellings.

123. Defendants breached this covenant by engaging in the conduct alleged herein and are liable for the injuries incurred by Plaintiffs as a direct and proximate result of that conduct. Accordingly, Plaintiffs are entitled to relief.

**H. EIGHTH CLAIM**

**NUISANCE**

**[Cal. Civil Code § 3479]**

124. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

125. Defendants' failure to timely repair the elevator or provide alternative, accessible housing to Plaintiffs has resulted in irreparable injury and constitutes a public nuisance to Plaintiffs and any other residents who are obstructed in their use of the subject property as a result of their disabilities, medical conditions, infirmities, illnesses, or other similar circumstances. Accordingly, Defendants are liable for creating and maintaining a public nuisance.

126. Despite being required by law to abate the nuisance, Defendants, and each of

[7] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

them, failed to correct conditions, rendering the Sacramento Street Apartments a nuisance for long periods of time that have continued through June 2026 and are expected to recur. Defendants, and each of them, knew, or reasonably should have known, that Plaintiffs would be injured as a result of this failure to abate the nuisance.

127. As the direct and proximate result of Defendants' actions, Plaintiffs suffered damages, including emotional and physical distress, discomfort and annoyance, loss of civil rights, frustration, fear, difficulty, and embarrassment. Plaintiffs are entitled to injunctive relief and damages, including punitive damages.[8]

128. There now exists an actual controversy between the parties regarding Plaintiffs' rights and Defendants' duties under Civ. Code, § 3479. Accordingly, Plaintiffs seek a declaration that Defendants have violated this section.

129. Plaintiffs have suffered damages and injuries as a result of the nuisances created by Defendants. Accordingly, they are entitled to relief.

## I. NINTH CLAIM

## UNFAIR COMPETITION LAW

## [Bus. & Prof. Code, § 17200 et seq.]

130. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

131. California's Unfair Competition Law ("UCL") makes actionable any unlawful, unfair, or fraudulent business act or practice. An unlawful business act or practice includes any "act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 195 Cal.App.4th 765, 773 (2011) (quoting *Bernardo v. Planned Parenthood Federation of Am*., 115 Cal.App.4th 322, 351-352 (2004).

132. Defendants have engaged in unfair or unlawful business practices, including but not limited to, violation of the statutory provisions alleged herein, in violation of the UCL.

---

[8] Plaintiff Andrew Lovas does not seek damages for pain and suffering under this cause of action until and unless the sunset provision in California Code of Civil Procedure § 377.34 (b) is extended.

133. Each of the Plaintiffs is a person as defined by the UCL.

134. Plaintiffs have "suffered injury in fact and [have] lost money or property as a result of [Defendants'] unfair competition," meeting the standing requirements of section 17204 of the UCL. They have experienced a diminution of the value of their tenancy and have been denied the benefits of their rental contracts. They are paying the same rent but are now denied the benefits of their residential property interest.

135. Accordingly, each Plaintiff is entitled to relief according to proof pursuant to Bus. & Prof. Code, §§ 17204-17208.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment:

1. That declares that Defendants have engaged in unlawful acts or practices in violation of each of the laws invoked in this complaint;

2. That enjoins Defendants, including their officials, agents, partners, employees, assignees, and all persons acting in concert or participating with them, from committing any of the unlawful acts or practices alleged in this complaint;

3. That requires Defendants, including their officials, partners, agents, employees, assignees, and all persons acting in concert or participating with them, to undertake affirmative steps to remedy the effects of the unlawful acts or practices alleged in this complaint or proven in this action, including but not limited to maintaining the elevator in good repair; taking all reasonable steps to repair it immediately when it breaks down; relocating or otherwise accommodating disabled tenants during extended outages as required by law; implementing policies for considering and granting reasonable accommodation requests; and training staff in their obligations towards tenants with disabilities;

4. That awards compensatory damages to Plaintiffs, according to proof;

5. That awards punitive damages to Plaintiffs, according to proof;

6. That awards statutory damages, as provided by statute or ordinance alleged herein;

7. That awards attorneys' fees, costs, and expenses to Plaintiffs; and,

8. That grants all such additional relief to which Plaintiffs are entitled.

Respectfully submitted,

McGUINNESS LAW GROUP, PC

Dated: August 3, 2026

*/s/ Liza Cristol-Deman*

Liza Cristol-Deman, Esq.
Attorneys for Plaintiff